IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CT-3134-D

RICKY LEE HOLLY, )
 )
 Plaintiff, )
 )
 v. ) ORDER
 )
THOMAS CHRISTENSEN et al., )
 )
 Defendants. )

Ricky Lee Holly ("Holly" or "plaintiff"), who was an inmate at Rivers Correctional Institution ("Rivers"), filed this action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), in the United States District Court for the District of Columbia. After plaintiff amended the complaint to name Willie Scott ("Scott") and George Snyder ("Snyder") as the sole defendants, the case was transferred to this court.[1] Snyder filed a motion for judgment on the pleadings, Holly responded, and Snyder replied. As explained below, Snyder's motion for judgment on the pleadings is granted.

I.

Holly, who was an inmate at Rivers, a privately-run facility operated by GEO Group, Inc. under contract with the Federal Bureau of Prisons ("BOP"), originally filed a lawsuit in this court for alleged violations of his constitutional rights. See Holly v. Scott, No. 5:03-CT-640-FL, [D.E. 35], at 1 (E.D.N.C. May 10, 2006). The court denied defendants' motion to dismiss and granted

---

[1] Defendant Willie Scott's location is unknown. See Snyder's Mem. of P. & A. in Supp. of Mot. to Dismiss or, Alternatively, to Transfer Venue 8 n.2; see also Holly v. Christensen, No. 1:07-CV-729-RJL, [D.E. 11], at 1 n.1 (D.D.C. Aug. 30, 2007) (order transferring case to E.D.N.C.). Scott was employed as the warden at Rivers until early 2004. Colleen Schultz Aff. ¶ 3g. The record does not indicate that plaintiff ever served process on Scott.

defendants' "motion for certification of order for immediate appeal." Id. On appeal, the Fourth Circuit reversed. See Holly v. Scott, 434 F.3d 287, 288 (4th Cir.), cert. denied, 547 U.S. 1168 (2006) [hereinafter "Holly I"].

Holly then filed this second action in the United States District Court for the District of Columbia, which was transferred to this court. Holly v. Christensen, No. 1:07-CV-729-RJL, [D.E. 11], at 1 (D.D.C. Aug. 30, 2007) (order transferring case to E.D.N.C.). Holly alleges that Rivers officials retaliated against him for filing the previous lawsuit. Am. Compl. ¶ 1. He seeks compensatory damages and punitive damages from Willie Scott ("Scott"), who was warden at Rivers during part of plaintiff's incarceration there, and who was a named defendant in Holly I. Id. ¶¶ 2–4. Holly also seeks compensatory and punitive damages from Snyder, who was warden at Rivers during a later portion of plaintiff's incarceration. Id. Plaintiff claims that after Scott and Dr. Gaddy Lassiter ("Lassiter"), the other named defendant in Holly I, were served with the complaint in Holly I on October 17, 2003, he "began to experience a pattern of severe treatment and deprivation of the few liberties he enjoyed as a prisoner, despite no changes in his own behavior." Id. ¶¶ 27–28, 30. Holly claims that on October 21, 2003, the Rivers staff "handcuffed [him] with such force and in such a manner that he suffered cuts on his wrists and his skin was rubbed raw." Id. ¶ 31. He claims that on October 23, 2003, "the Rivers staff placed [him] in solitary confinement for 'protective custody,' based on a specious claim that a serious threat existed to his safety," but did not disclose the source of that threat. Id. ¶ 32. On October 30, 2003, plaintiff allegedly "blacked out" while in solitary confinement and did not receive any medical treatment, but was placed in handcuffs with such force that he was injured. Id. ¶ 33. In response to his inquiry about being placed in solitary confinement, plaintiff states that he was told that Nurse Keel, the head healthcare

2

administrator at Rivers, ordered his placement in solitary confinement. Id. ¶ 34. Plaintiff claims "several members of the non-medical correctional staff at Rivers informed [him] that Nurse Keel had ordered [his] placement . . . in solitary confinement because he had filed a lawsuit against members of the River[s] staff." Id. ¶ 35. Plaintiff contends, "[o]n information and belief, Defendant Scott was personally aware of Nurse Keel's and the rest of Rivers staff's retaliatory actions against Mr. Holly and failed to reprimand them or stop their actions." Id. ¶ 37.

Plaintiff alleges that "[a]fter being informed that he was being placed in solitary confinement in retaliation for filing [Holly I], [he] followed the proper procedures to challenge this unlawful punishment and retaliation." Id. ¶ 38. Plaintiff again asked why he was placed in solitary confinement. Id. ¶ 39. Plaintiff states that on November 5, 2003, Lt. Stevenson, a Rivers employee, told him that he was placed in solitary confinement not for protective custody, but because of his diabetes. Id. ¶ 40. Plaintiff claims that shortly thereafter, he was transferred from solitary confinement to the medical unit, only to be returned to solitary confinement. Id. ¶¶ 43–44. On November 13, 2003, Lt. Chance, another Rivers employee, allegedly told plaintiff that his placement in solitary confinement "was based on 'observation.'" Id. ¶ 47. On November 25, 2003, Dr. Lassiter signed a form stating that Holly could be released from solitary confinement. Id. ¶ 49.

Plaintiff alleges that in March 2004, Nurse Keel interfered with food service and attempted to prevent him from receiving the medically-ordered snack bag he needed as part of his diabetes management regimen. Id. ¶ 52. Then, in April 2004, he claims he was no longer allowed to keep non-narcotic medication with him, but had to wait in line to get the medication. Id. ¶ 53.

Plaintiff alleges he "suffered an adverse physical reaction to [his] insulin" on July 1, 2004, causing him "to lose partial consciousness and to react violently to those around him." Id. ¶ 62.

Holly contends that even though the prison staff knew of his diabetes and knew that insulin could cause such an adverse reaction, disciplinary proceedings were initiated against him. See id. ¶¶ 63–66. He alleges he was sentenced to 30 days in solitary confinement and lost 27 days of earned good time credits even though the disciplinary hearing officer acknowledged that there was a medical reason for plaintiff's action during the incident. Id. ¶ 68. Plaintiff contends that "this punitive reaction to [his] medical emergency was motivated by animus toward him for filing [Holly I]." Id. ¶ 67.

On December 17, 2004, plaintiff was housed in the medical isolation unit at Rivers. The staff confronted him for allegedly wiping the viewing camera in the unit with some sort of substance. Id. ¶ 69. In response, plaintiff used profanity and threw objects at the staff. Id. As a result, Holly claims the disciplinary hearing officer revoked an additional 14 days of earned good time credits and sentenced him to an additional 30 days in solitary confinement. Id. ¶ 70. Holly contends that he was punished because he filed Holly I, and that defendant Scott was aware plaintiff "was being deprived of good time credits in retaliation for filing [Holly I]." Id. ¶¶ 71–72. According to plaintiff, "[a]s 'punishment' for filing [Holly I], Holly had a total of at least 40 days of earned good time credits revoked from him." Id. ¶ 73.

Holly alleges he received a notice in early 2005 that he would not be transferred to a Community Corrections Center ("CCC") because of the disciplinary actions. Id. ¶ 77. Holly contends he was denied CCC time in retaliation for filing the lawsuit, and that defendant Snyder, who was the warden at the time, "was aware or should have been aware that [plaintiff] was denied CCC time in retaliation for having filed [Holly I]." Id. ¶¶ 78–79. Plaintiff was released from Rivers on August 9, 2005. Id. ¶ 80.

4

In this second action, Holly claims that: (1) his First Amendment rights were violated in retaliation for exercising his constitutional rights in that Rivers staff placed him in administrative segregation, revoked earned good time credit, and denied him placement in the CCC (id. ¶¶ 81–85); (2) he was deprived of his Fifth Amendment right to due process in the disciplinary process which resulted in the loss of good time credits (id. ¶¶ 86–89); and (3) his Eighth Amendment rights were violated by the unjustified punishment in retaliation for filing a lawsuit (id. ¶¶ 90–94). Holly seeks compensatory damages, punitive damages, attorney's fees, and costs from Snyder and Scott.

II.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Snyder filed his answer to the first amended complaint on September 17, 2007, and the pleadings are closed. See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002). Further, "[a]s a general rule, an amended pleading ordinarily supercedes the original and renders it of no legal effect." Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (quotation omitted). Thus, the court considers the allegations in the first amended complaint in analyzing Snyder's motion for judgment on the pleadings.

The same standard applies to motions to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as applies to motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). See Elkins Radio Corp., 278 F.3d at 405–06. A motion to dismiss a complaint under Rule 12(b)(6) challenges the sufficiency of the complaint. See, e.g., Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–70 (2007); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained

5

in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam). Nonetheless, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth, 444 F.3d at 319 (quotation omitted).

### III.

#### A.

Snyder first contends that Holly's claims arising out of actions taken before April 20, 2004, are barred by the three-year statute of limitations. Holly filed his complaint on April 20, 2007. In determining whether the Bivens claims were timely filed, the court must borrow the applicable state statute of limitations. See, e.g., Hardin v. Straub, 490 U.S. 536, 539–40 (1989) (courts borrow limitations periods from state law in 42 U.S.C. § 1983 actions); Owens v. Okure, 488 U.S. 235, 249–50 (1989) (same); Wilson v. Garcia, 471 U.S. 261, 276 (1985) (same); cf. Chin v. Bowan, 833 F.2d 21, 23–24 (2d Cir. 1987) (analysis to determine limitations periods under Okure and Wilson applies with equal force to Bivens actions); McSurely v. Hutchison, 823 F.2d 1002, 1005 (6th Cir. 1987) (same). The statute of limitations for a Bivens claim in North Carolina is three years. See Reinbold v. Evers, 187 F.3d 348, 359 (4th Cir. 1999); Mallas v. Kolak, 721 F. Supp. 748, 751 (M.D.N.C. 1989), vacated in part on other grounds sub nom. Mallas v. United States, 993 F.2d 1111 (4th Cir. 1993); N.C. Gen. Stat. § 1-52(5).

Although the court borrows the limitations period from state law for claims brought under Bivens, the time of accrual is a question of federal law. See Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007); Reinbold, 187 F.3d at 359 n.10 (citing Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc)). A claim accrues when the wrongful act results in injury and the plaintiff knows or has reason to know of the injury which is the basis of the action. See, e.g.,

6

Wallace, 127 S. Ct. at 1097; Nasim, 64 F.3d at 955. In light of the allegations in the amended complaint (e.g., Am. Compl. ¶¶ 35, 38), plaintiff's claims for incidents occurring before April 20, 2004, are time-barred. See, e.g., Dean v. Pilgrim's Pride, 395 F.3d 471, 474 (4th Cir. 2005).

B.

Snyder next contends that Holly has failed to state a claim because Bivens does not apply to private individuals, such as Snyder, who was an employee of GEO Group at the time of the alleged constitutional violations. See Holly I, 434 F.3d at 294. When a plaintiff seeks a Bivens remedy, the court "must determine that (1) Congress has not already provided an exclusive statutory remedy; (2) there are no special factors counselling [sic] hesitation in the absence of affirmative action by Congress; and (3) there is no explicit congressional declaration that money damages not be awarded." Holly I, 434 F.3d at 290 (quotation omitted). Here, as in Holly I, "the first and third prongs are satisfied by Congress's silence" regarding remedies for the alleged constitutional violations at issue in this case. See id. The question is therefore whether there are special factors counseling hesitation that would preclude plaintiff's new Bivens claims.

1.

The Fourth Circuit's holding in Holly I casts a long shadow. Although the Fourth Circuit purported not to decide the issue, id. at 291, the appeals court strongly implied that private individuals such as Snyder may never be subject to suit under Bivens. See, e.g., id. at 292 ("Application of Bivens to private individuals simply does not find legislative sanction."); id. at 291 ("[W]e harbor some doubt as to whether such liability would ever be appropriate."). Relying on this language in Holly I, courts in this district have repeatedly held, and the Fourth Circuit has agreed, that private individuals who work as employees for GEO Group at Rivers are not subject to liability under Bivens. See, e.g., McGill v. Snyder, No. 5:05-CT-249-FL, 2006 WL 4692565, at *1

7

(E.D.N.C. Aug. 8, 2006) (unpublished) ("Because Rivers is a privately run correctional facility, plaintiff's constitutional claims against defendants are DISMISSED."), aff'd, 214 F. App'x 330, 330 (4th Cir. 2007) (per curiam) (unpublished) ("[W]e affirm for the reasons stated by the district court."); Rivas v. The GEO Group, Inc., No. 5:06-CT-3049-D, 2006 WL 4692571, at *1 (E.D.N.C. July 13, 2006) (unpublished) ("Bivens does not apply to the Rivers[] employees and does not subject these private parties to liability."), aff'd, 214 F. App'x 320, 320 (4th Cir. 2007) (per curiam) (unpublished) ("[W]e affirm for the reasons stated by the district court."); Flores-Rosales v. Vann, No. 5:04-CT-623-H, 2006 WL 4660603, at *1 (E.D.N.C. June 7, 2006) (unpublished) ("Because 'defendants are private individuals, not government actors,' Bivens is inapplicable and does not subject the private parties to liability." (quoting Holly I, 434 F.3d at 290)), aff'd sub nom. Flores-Rosales v. The GEO Group, Inc., 210 F. App'x 271, 271 (4th Cir. 2006) (per curiam) (unpublished) ("[W]e affirm on the reasoning of the district court.").

Plaintiff attempts to limit Holly I to its facts. He argues that Holly I only applies to the unique circumstances in that case and does not extend to his retaliation-based claims in this case. See Pl.'s Mem. in Opp'n to Snyder's Mot. for J. on the Pleadings [hereinafter "Pl.'s Mem."] 5–6, 9–10. The court disagrees. Notably, plaintiff alleged in Holly I "that in retaliation for a written complaint regarding the medical department, [Dr.] Lassiter [of Rivers] ordered that he be locked in the medical unit for twenty-four days and threatened to keep him there for the remainder of his sentence." Holly I, 434 F.3d at 288. Nevertheless, the Fourth Circuit held that dismissal was appropriate. Moreover, regardless of whether some private individuals might be subject to liability under Bivens, Holly I and its progeny make clear that GEO Group employees at Rivers are not subject to liability under Bivens. Plaintiff's new Bivens action is directed solely at two such employees and fails based on stare decisis.

8

2.

Alternatively, even if GEO Group employees at Rivers could possibly be liable under Bivens, the same two special factors that applied in Holly I preclude plaintiff's new Bivens action against Snyder. In Holly I, the Fourth Circuit found two special factors, "each of which independently preclude[d] the extension of Bivens. First, [those] defendants [were] private individuals, not government actors. Second, Holly ha[d] an adequate remedy against [those] defendants for his alleged injuries . . . ." Holly I, 434 F.3d at 290. Each of those special factors is present here and precludes Holly's latest Bivens action.

As mentioned, the first special factor requires a court to assess whether Snyder is a private individual or government actor. Although the Fourth Circuit did not decide whether private individuals might ever be subject to Bivens claims, Holly I, 434 F.3d at 291, the appeals court held that Bivens claims against private prison officials at Rivers are barred because "[a]pplication of Bivens to private individuals simply does not find legislative sanction." Id. at 292. The Fourth Circuit noted the dangers of judicially creating new liability schemes that might upset Congressional policy choices. See id. at 292–94. Further, the appeals court held that "[t]he alleged actions of th[ose] defendants were not of a sufficiently federal character to create constitutional liability." Id. at 292. The Fourth Circuit rejected Holly's argument that the Rivers officials were performing a "public function," because Holly was serving a federal sentence and his complaints were about his medical care while incarcerated. See id. at 292–94.

In his new Bivens action, Holly argues that his new action is not about medical care, but about two Rivers officials retaliating against him during his federal sentence for filing Holly I. See Pl.'s Mem. 9–10. Holly maintains that "the injuries alleged in the present complaint do not arise from the operation of the Rivers facility, but [rather from] the extension and administration of [his]

9

incarceration." Id. at 10. He therefore argues that he escapes the holding of Holly I because the defendants were performing a "public function." See id.

The court need not interpret the "public function" analysis in Holly I or other cases, because plaintiff is still attempting to use Bivens against private individuals employed at Rivers. In Holly I, the Fourth Circuit repeatedly emphasized the danger of extending Bivens to authorize an action for money damages against such private individuals without Congress' blessing. See, e.g., Holly I, 434 F.3d at 294 n.4 ("If Congress wishes to . . . extend the Bivens cause of action to private employees of private entities, it has only to do so."). Even if the courts of this district have incorrectly held, and the Fourth Circuit has improvidently affirmed, that Rivers employees are not subject to suit under Bivens, the court declines to extend Bivens when the Fourth Circuit has refused to do so. Accordingly, the fact that plaintiff is attempting to sue two private individuals employed at Rivers under Bivens bars his latest action.

As for the second special factor, Holly's Bivens action is also barred because he has adequate alternative remedies. See Holly I, 434 F.3d at 295. Although neither the Supreme Court nor the Fourth Circuit has defined what constitutes an adequate alternative remedy, the Supreme Court's most recent Bivens case makes clear that Bivens liability will not lie "[s]o long as the plaintiff ha[s] an avenue for some redress . . . ." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001). As the Supreme Court explained, in light of the alternative remedies, "bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." Id. Here, Holly argues that the BOP's administrative processes do not satisfy the alternative remedy requirement, and contends that Snyder must identify an alternative remedy under state law.

The court rejects plaintiff's argument. Holly has "an avenue for some redress" under Malesko because he can seek redress for the alleged constitutional violations through the BOP's

10

Administrative Remedy Program ("ARP"). See 28 C.F.R. §§ 542.10 et seq. (2007). Under that process, Holly may challenge the disciplinary hearing officer's decisions by appealing to the BOP's Regional Director. See id. §§ 541.19, 542.15(a). If dissatisfied with the Regional Director's decision, Holly may appeal to the BOP's general counsel. See id. § 542.15(a). As part of the administrative process, Holly may also raise bias and retaliation claims in the ARP. See id. §§ 541.10(b)(3)–(4), 541.19. Further, Holly may challenge issues associated with his medical condition. See id. § 541.10(b). Remedies crafted pursuant to Congressional authority (such as administrative review mechanisms), as opposed to judicially-crafted remedies, are constitutionally adequate as an alternative remedy. See, e.g., Bush v. Lucas, 462 U.S. 367, 378 n.14 (1983) ("The existing civil service remedies for a demotion in retaliation for protected speech are clearly constitutionally adequate.").

Holly responds that the administrative remedies available to him in ARP are different than those at issue in Bush. Specifically, Holly argues that "[i]nternal administrative remedies within a prison are not a valid alternative to court remedies." Pl.'s Mem. 7 n.3. However, the Supreme Court has repeatedly rejected the notion that a remedy is not an adequate alternative under Bivens merely because it does not afford the plaintiff the particular relief he desires (e.g., compensatory and punitive damages) in the particular forum he desires (i.e., federal court). See, e.g., Malesko, 534 U.S. at 69 ("We therefore rejected the claim that a Bivens remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court."); Schweiker v. Chilicky, 487 U.S. 410, 428–29 (1988) (rejecting Bivens claim notwithstanding that plaintiffs "have not been adequately recompensed for their injuries"); United States v. Stanley, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] . . . an 'adequate' federal remedy for his injuries."); Bush, 462 U.S. at 388 ("The

11

question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue."). Obviously, the ARP and the administrative program in Bush are not identical. Nonetheless, Bush illustrates the persistent caution, grounded in bedrock principles of separation of powers, that the Supreme Court has exercised about extending Bivens. See, e.g., Malesko, 534 U.S. at 70 ("In 30 years of Bivens jurisprudence, we have extended its holding only twice . . . ."). That same caution applies in this case.

Because Holly has an alternative federal remedy in the form of the ARP, it is irrelevant (if it is even true) that plaintiff has no state-law remedy. Cf. Pl.'s Mem. 8. Accordingly, the court declines plaintiff's invitation to extend Bivens' holding to apply in this case. In light of this conclusion, the court need not and does not address Snyder's numerous alternative arguments in support of his motion for judgment on the pleadings.

IV.

As explained above, plaintiff fails to state a claim upon which relief can be granted against defendant Snyder. Therefore, defendant Snyder's motion for judgment on the pleadings is GRANTED.

SO ORDERED. This 7 day of April 2008.

JAMES C. DEVER III
United States District Judge